STAVROS ZAFIRATOS AND ERIKETI ZAFIRATOS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zafiratos v. Commissioner
Docket No. 18869-88
United States Tax Court
T.C. Memo 1992-135; 1992 Tax Ct. Memo LEXIS 198; 63 T.C.M. (CCH) 2301; T.C.M. (RIA) 92135; March 9, 1992, Filed *198 Decision will be entered under Rule 155. Held: Respondent's deficiencies and negligence additions sustained; Mrs. Zafiratos determined to be an innocent spouse. Steven J. Jozwiak and Elliott Brenner, for petitioners. Michael D. Baker, for respondent. WHITAKER
WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax for the years and in the amounts indicated below: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Years
Deficiencies
6653(a) [1]
6653(a)(1)
6653(a)(2)
6661
1980
$ 12,531
$ 626.55
--   --   --  1981
11,964
--  $ 598.20
50% of interest
--  due on $ 11,964
1982
8,989
--  449.45
50% of interest
$ 2,247
due on $ 8,989
The issues before the Court *199 are whether or not petitioner Mr. Zafiratos underreported his income for each of the years in question; whether or not Mrs. Zafiratos qualifies as an innocent spouse; and whether petitioners are subject to additions to tax. FINDINGS OF FACT Petitioners are husband and wife. They were both born in Greece and immigrated to this country in 1971. Both petitioners received high school educations in Greece. Mr. Zafiratos served in the merchant marine in Greece before coming to this country. During the years before the Court Mrs. Zafiratos was unemployed. Mr. Zafiratos' ability to read, write, understand, and speak English is somewhat limited, and for that reason an interpreter was used during trial. Mrs. Zafiratos' ability to read, write, speak, and understand English is far more limited than that of Mr. Zafiratos. Mrs. Zafiratos was not involved at all in her husband's business during the years before the Court. She did not keep a checkbook nor did she write any checks. From 1971 through the date of trial, Mr. Zafiratos was self-employed as a food and beverage vendor operating a transportable stand in Philadelphia, Pennsylvania, near the corner of Fifth and Market Streets in *200 an area popular with tourists. Except on holidays, Mr. Zafiratos customarily worked 52 weeks a year from about 6:00 in the morning to 5:30 to 6:00 in the evening. Mr. Zafiratos did not work on holidays or when the weather was too bad. His business depended, in part, on purchases by individuals who worked in nearby businesses and, in part, especially during the summer, on tourists. Mr. Zafiratos was a cash-basis taxpayer whose income and expenses were reported on Schedules C attached to his Federal income tax returns. When not open for business, petitioner kept his cart in a nearby garage which he shared with four other street vendors. Part of his supplies were picked up by him in the garage and part were delivered to him by the suppliers at his corner stand. Petitioner sold hot dogs, sausage, donuts, danish, corn muffins, coffee, tea, Sanka, cocoa, soda, and juice. He, therefore, used large quantities of cups and lids. Due to the nature of the food and drinks sold by Mr. Zafiratos, waste was a significant element in his business expenses. Most of the food and drink which he did not sell each day had to be thrown away at the end of the day. On some occasions, he took food *201 home for consumption by himself and his wife. Mr. Zafiratos maintained records in calendar books of his daily receipts and related expenses, but, unfortunately, during the audit of these years, petitioner did not produce the calendar books but instead produced summaries therefrom. The calendar books for the years 1980 through 1982 were thrown away prior to trial, although petitioner did produce later calendar books and the record includes photostatic copies of selected pages therefrom. Petitioner customarily made appropriate entries on a daily basis in his record book. In connection with tax return preparation, Mr. Zafiratos gave his accountant and tax return preparer all of his invoices and information as to his income and expenses. His tax return preparer also prepared sales tax returns. Therefore, income had to be reported to the preparer either monthly or quarterly. The preparer did not actually audit or compile information from the calendar books. Also, where Mr. Zafiratos had no records of the cost of merchandise, the accountant would sometimes estimate the cost for tax return purposes. Mr. Zafiratos also customarily recorded in his calendar book the weather, whether *202 good or bad, because the weather had a substantial impact on his business. Since Mr. Zafiratos did not present his calendar books to the revenue agent during the audit, much of the information which the agent used to prepare the statutory notice was obtained directly from suppliers. However, a number of the suppliers failed to keep records by the name of the vendor-purchaser, hence, much of the information obtained from suppliers was estimated or approximated. Petitioners' 1980 and 1981 Federal income tax returns were audited. For 1982 the revenue agent used information from the 1981 tax year to estimate the 1982 deficiency. The revenue agent estimated the quantity of drinks sold from the number of cups purchased from suppliers. For the 3 years in question, petitioner's gross receipts as determined by respondent in accordance with the invoices admitted into evidence, petitioners' gross receipts as reported on their returns, and petitioners' underreported sales were in the amounts set forth below: 1980
1981
1982
Gross receipts
per invoices
$ 57,166.80
$ 59,959.35
$ 68,709.15
Gross receipts
per returns
41,832.00
42,864.23
54,248.00
Underreported sales
15,334.80
17,095.12
14,461.15
*203 In 1979 petitioners purchased a piece of real property located at Carteret Drive in Philadelphia. In 1980 petitioners sold another parcel of land located in Philadelphia. OPINION The burden of proof in this case is upon petitioners. On brief, petitioners appear to have decided to focus on errors or alleged errors in the statutory notice, maintaining the position that petitioners' tax returns were accurate in all respects. Unfortunately, the testimony of the tax return preparer to the effect that, where he lacked invoices, he estimated appropriate figures demonstrates that petitioners' tax returns were not accurate. The only evidence in this record for petitioner as to his income and expenses for these 3 years are copies of his income tax returns, copies of invoices, and copies of the summaries which were given to his tax return preparer for purposes of preparing the returns and which were also given to or shown to the revenue agent during the course of the audit. We find both petitioners to be credible witnesses and we believe Mr. Zafiratos' method of bookkeeping by entries in a calendar book was adequate under the circumstances. However, without the calendar books for the *204 years 1980, 1981, and 1982, the years before the Court, petitioners simply have not proven their case. We are unwilling to accept unsubstantiated figures from the summary sheets as reflecting correctly petitioners' income and expenses. It is simply unfortunate that Mr. Zafiratos chose to destroy his calendar books prior to the trial of this case and that he did not produce those calendar books for the revenue agent. A petitioner before this Court has the obligation to show that either his tax returns were correct or the correct amount of taxable income during each of the years before the Court. With Mr. Zafiratos' contemporary records destroyed, there is simply no acceptable way that he could discharge his burden in this case. Accordingly, based upon the invoices admitted into evidence, we hold for respondent with respect to the deficiencies in amounts equal to petitioners' underreported sales as set forth in the Findings of Fact. Petitioner tried to excuse his failure to produce the calendar books during the audit for the reason that the agent did not specifically ask for them. However, the agent did ask petitioner for additional documents and source material to verify the *205 summary sheets. Why the calendar books were not shown to the examining agent is not satisfactorily explained. While we suspect that a large part of the problem in this case is Mr. Zafiratos' difficulties with the English language, that cannot substitute for concrete evidence. The calendar books for the years 1987 and 1988, which were produced in Court by Mr. Zafiratos, appear to show daily gross receipts and related expenses and presumably would constitute adequate records for income tax purposes. With respect to the application of sections 6653(a), 6653(a)(1), and (a)(2) to this case, the failure to maintain adequate books and records does constitute negligence. . The Code and regulations are not satisfied merely by initially maintaining adequate records. They must be retained for audit purposes. Thus, while the calendar books which Mr. Zafiratos maintained for the years before the Court may have been adequate under the circumstances, if they had been presented to the revenue agent for audit or had been available for the Court in the trial of the case, the destruction of those books removes any basis *206 for the Court to hold for petitioners on the negligence issue. See, e.g., . Petitioners are therefore subject to the negligence additions. With respect to the applicability of section 6661(a), the understatement for 1982 is in excess of 10 percent of the amount required to be shown on the return or $ 5,000. See section 6661(b)(1). Section 6661(b)(2)(B) provides that the understatement of income tax may be reduced either if there is substantial authority for the tax treatment on the return of the items in question or if the relevant facts are adequately disclosed. Neither of these relief provisions is applicable. Therefore, petitioners are subject to the section 6661(a) addition. The remaining issue is the applicability of section 6013(e), the innocent spouse provision. For the spouse to be relieved of liability, he or she must meet four requirements: (1) A joint return has been made; (2) the return shows a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) the other spouse establishes that he or she did not know and had no reason to know of the substantial *207 understatement at the time the return was signed; and (4) it is inequitable to hold the other spouse liable for the liability attributable to such substantial understatement.
There is no question in this case as to compliance with the first two requirements, i.e., there was a joint return and a substantial understatement of tax attributable to Mr. Zafiratos' business income with respect to which Mrs. Zafiratos had no connection. Mrs. Zafiratos testified that, while she signed the tax returns, she did not understand their contents. It is true that Mrs. Zafiratos ran the family household on funds given her by her husband, but her lack of understanding of the English language precluded her from buying and paying for groceries. Respondent argues that a reasonable person exposed to the facts would know of the omitted income. We disagree. Since Mrs. Zafiratos did not know what was on the tax returns, she could not have known that income was unreported unless her husband had specifically told her that he was consciously underreporting income. Based on this record, we conclude that Mrs. Zafiratos not only did not know but she had no reason to know of the underreporting. Finally, *208 we conclude that Mrs. Zafiratos did not herself benefit from the unreported income. It is possible that some of the unreported income in prior years was used in part to purchase petitioners' residence but that is immaterial. The cost during the years before the Court of maintaining their residence and providing clothes, food, and other items of support, even if it could be traced to the unreported income, which cannot be done, is simply normal support. ; ; . Respondent also argues that Mrs. Zafiratos participated in several real estate transactions during the years, one of which was the 1980 purchase of their home and another an investment property. Thus, respondent argues that she was entitled to the benefits of owning real property with her husband. However, unless she personally benefited from this ownership beyond the extent that it may have contributed to her support, it would not show "benefit" for purposes of section 6013(e). There is no evidence to this effect and both *209 petitioners testified that Mrs. Zafiratos received only normal support. Based upon the entire record, we conclude that Mrs. Zafiratos has met each of the innocent spouse requirements, and is therefore entitled to relief under section 6013(e). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩